UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| JACQUELYN WASCHURA, ) | CASE NO. 1:11CV201 |
| ) | |
| Plaintiff, ) | MAGISTRATE JUDGE GEORGE J. |
| ) | LIMBERT |
| v. ) | |
| ) | |
| MICHAEL J. ASTRUE, ) | **MEMORANDUM OPINION AND** |
| COMMISSIONER OF ) | **ORDER** |
| SOCIAL SECURITY, ) | |
| ) | |
| Defendant. ) | |

Jacquelyn Waschura ("Plaintiff") seeks judicial review of the final decision of Michael J. Astrue ("Defendant"), Commissioner of the Social Security Administration ("SSA"), denying her application for Supplemental Security Income ("SSI"). ECF Dkt. #1. For the following reasons, the decision of the Commissioner is affirmed.

**I.    PROCEDURAL AND FACTUAL HISTORY**

On April 28, 2006, Plaintiff filed applications for SSI and Disability Insurance Benefits ("DIB") alleging disability beginning November 1, 2003. ECF Dkt. #11 at 169-179.[1] The SSA denied Plaintiff's application initially and on reconsideration. *Id.* at 122-125.

Plaintiff filed a request for an administrative hearing. *Id.* at 57. On December 8, 2008, an ALJ conducted an administrative hearing where Plaintiff was represented by counsel. *Id.* at 75-121. At the hearing, Plaintiff amended her onset date to April 18, 2006[2], and the ALJ heard testimony from Plaintiff, Ted Macy, a vocational expert ("VE"), and Dr. Joseph Steiner, a medical expert ("ME"). *Id.* On February 25, 2009, the ALJ issued a Decision denying benefits. *Id.* at 65-74. Plaintiff filed a request for review, which the Appeals Council denied. *Id.* at 50-53.

---

[1] Page numbers refer to "Page ID" numbers in the electronic filing system.

[2] Because Plaintiff's date last insured is December 31, 2003, she withdrew her application for DIB at the hearing based upon her amended onset date.

On January 27, 2011, Plaintiff filed the instant suit seeking review of the ALJ's decision. ECF Dkt. #1. On July 7, 2011, Plaintiff filed a brief on the merits. ECF Dkt. #14. On August 22, 2011, Defendant filed a brief on the merits. ECF Dkt. #17. No reply brief was filed.

## II. **SUMMARY OF RELEVANT PORTIONS OF THE ALJ'S DECISION**

The ALJ determined that Plaintiff suffered from bipolar disorder, major depressive disorder, anxiety disorder, cyclothymic disorder, and polysubstance dependence, which qualified as severe impairments under 20 C.F.R. §416.921, *et seq. Id.* at 67. The ALJ next determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1(20 C.F.R. 416.925, and 416.926). *Id.*

The ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform the full range of work at all exertional levels but with the following nonexertional limitations: she is limited to simple, routine, repetitive tasks, in a work environment free of fast paced production requirements; involving only simple, work-related decisions, with few, if any, work place changes; she is further limited to superficial interaction with the general public, co-workers, and supervisors; no arbitration, negotiation or conflict resolution; no supervision of others or the responsibility for the care and well-being of others. *Id.* at 69.

The ALJ further found that Plaintiff was unable to perform past relevant work, but could perform the requirements of representative occupations such as bench assembler, wire worker, and laundry laborer based upon the VE's testimony. *Id.* at 74. Accordingly, the ALJ determined that Plaintiff had not been under a disability as defined in the SSA and was therefore not entitled to benefits. *Id.*

## III. STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

To be eligible for benefits, a claimant must be under a "disability" as defined by the Social Security Act. 42 U.S.C. §§ 423(a) & (d), 1382c(a). Narrowed to its statutory meaning, a "disability" includes physical and/or mental impairments that are both "medically determinable" and severe enough to prevent a claimant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *Id.* An SSI

claimant bears the ultimate burden of establishing that he or she is disabled under the Social Security Act's definition. *Key v. Callahan*, 109 F.3d 270, 274 (6th Cir.1997).

Administrative regulations require a five-step sequential evaluation for disability determinations. 20 C.F.R. §§ 404.1520(a) (4), 416.920(a)(4):

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see 20 C.F.R. § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

### IV. STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by § 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990). The Court cannot reverse the decision of an ALJ, even

if substantial evidence exists in the record that would have supported an opposite conclusion, so long as substantial evidence supports the ALJ's conclusion. *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 528 (6th Cir.1997). Substantial evidence is more than a scintilla of evidence, but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is evidence that a reasonable mind would accept as adequate to support the challenged conclusion. *Id.*; *Walters,* 127 F.3d at 532. Substantiality is based upon the record taken as a whole. *Houston v. Sec'y of Health and Human Servs.*, 736 F.2d 365 (6th Cir. 1984).

## V. ANALYSIS

The ALJ in this case did not credit the opinion of a treating physician, Dr. Melody Deogracias, M.D. in its entirety. Although the ALJ included several limitations in Plaintiff's RFC based upon her mental problems, she rejected Dr. Deogracias' conclusion that Plaintiff was incapable of full-time work, due to a lack of evidence in the record supporting such a conclusion. Plaintiff contends that the ALJ failed to give controlling weight to the opinion of a treating physician, and, in the alternative, failed to provide a proper explanation for his decision to reject the treating physician's opinion. Plaintiff further argues that the ALJ improperly characterized the evidence in the record, essentially ignoring evidence that she suffered a laundry list of emotional problems throughout the relevant time period, which prevented her from working. In a related argument, Plaintiff asserts that the testimony of an ME cannot provide a sufficient basis for rejecting the opinion of a treating physician.

The ALJ must generally give greater deference to the opinions of the claimant's treating physicians than to those of non-treating physicians. SSR 96-2p, 1996 WL 374188 (July 2, 1996); *Wilson*, 378 F.3d at 544. A presumption exists that the opinion of a treating physician is entitled to great deference. *Id.*; *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 (6th Cir. 2007). Accordingly, if that presumption is not rebutted, the ALJ must afford controlling weight to the opinion of the treating physician if that opinion regarding the nature and severity of a claimant's conditions is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record." *Wilson,* 378 F.3d at 544.

However, "[t]he determination of disability is [ultimately] the prerogative of the [Commissioner], not the treating physician." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) quoting *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir.1985). When an ALJ determines that a treating physician's opinion is not entitled to controlling weight, he must consider the following factors in determining the weight to give to that opinion: the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors. *Id.*

If an ALJ decides to discount or reject a treating physician's opinion, he must provide "good reasons" for doing so. SSR 96-2p. The ALJ must provide reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* This allows a claimant to understand how his case is determined, especially when he knows that his treating physician has deemed him disabled and he may therefore " 'be bewildered when told by an administrative bureaucracy that he is not, unless some reason for the agency's decision is supplied.' " *Wilson,* 378 F.3d at 544 quoting *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir.1999).

Further, it "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." *Id.* If an ALJ fails to explain why he rejected or discounted the opinions and how those reasons affected the weight accorded the opinions, this Court must find that substantial evidence is lacking, "even where the conclusion of the ALJ may be justified based upon the record." *Rogers,* 486 F.3d at 243, citing *Wilson*, 378 F.3d at 544.

"When a treating physician . . . submits an opinion on an issue reserved to the Commissioner-such as whether the claimant is 'disabled' or 'unable to work'- the opinion is not entitled to any particular weight." *Turner v. Commissioner of Social Security*, No. 09-5543, 2010 WL 2294531 at *4, (6th Cir. June 7, 2010), unreported; *see also* 20C.F.R. §416.927(e)(1). "Although the ALJ may not entirely ignore such an opinion, his decision need only explain the consideration given to the treating source's opinion." *Id*. (internal quotation and citation omitted). In *Turner*, a treating source opined that the claimant was unable to work" and was not "currently capable of a full-time 8-hour workload." *Id*. at *5. The Sixth Circuit held that the ALJ adequately

addressed the opinion in stating that it was an opinion on an issue reserved to the Commissioner. *Id*.

At the hearing, Plaintiff testified that she is unable to work because she has good days and bad days. She has a lot of energy on a good day, however, on a bad day she feels like someone is sitting on her chest and she cannot breathe and/or she vomits. *Id*. at 83-84. She testified that she gets hives and all that she wants to do is sit in her bedroom, sometimes in the dark. *Id*. at 84. She further testified that she can spend several days at a time in her bedroom. *Id*. Good days last for a week or two, while bad days last for three to four days. *Id*. at 84. Plaintiff could not identify the trigger for her anxiety. *Id*. at 85. When asked how many bad days she has in a month, she responded, "it varies, I mean, sometimes, you know, I could just, have one episode a month and other times, like I said, just, it's like it's never ending." *Id*. at 84-85.

Plaintiff was admitted to the hospital on January 7, 2006. *Id*. at 261-264, after she ingested a handful of Lamisil (an anti-fungal medication), cocaine, and alcohol. *Id*. at 264. She denied attempting suicide, stating that when she realized that she had forgotten to take the pills for a few days, she decided to take a large dose. *Id*. She claimed at the time that she would have taken Valium or Percocet if she wanted to commit suicide. *Id*. Plaintiff had recently lost her job and her boyfriend. *Id*. at 265. She was hospitalized approximately one week later due to nausea and vomiting. *Id*. at 273.

On February 26, 2006, Plaintiff underwent an initial psychiatric evaluation at the Center for Families and Children. *Id*. at 406-408. Maria Obias, MSN, CNS, diagnosed Plaintiff with cyclothymic disorder, anxiety, and polysubstance abuse. She characterized Plaintiff as alert, coherent and oriented, and her appearance as clean and neat, age appropriate. Although Plaintiff's mood was moderately depressed, irritable, and anxious, Obias wrote that her thought process was intact and concrete. She noted the Plaintiff suffered delusions of persecution and helplessness, but that her perception was normal. Although her judgment was fair, she was not concentrating well and not focused. Obias recommended Lexapro and Seroquel, which had been previously prescribed, and advised Plaintiff to avoid alcohol and illegal drugs.

Dr. Deogracias treated Plaintiff sporadically from February of 2006 to August of 2007.  Dr. Deogracias' medical notes in the record are dated November of 2006, December 11, 2006, February 12, 2007, May 11, 2007, and August 10, 2007.  Dr. Deogracias' notes document Plaintiff's ongoing frustration with her family, *Id.* at 412, 423, and the social security application process. *Id.* at 409. According to the notes, Plaintiff's mood shifted from teary at some appointments to euthymic on others, but her affect and her attire were consistently appropriate, and her complaints involved the typical aggravations and disappointments of daily life. *Id.* at 424, 423.

Plaintiff argues that, although her medical records do not support the extreme conclusion reached by Dr. Deogracias regarding Plaintiff's ability to work, the undersigned should consider that Plaintiff condition would be much worse if she was forced to withstand the stress of work. However, Plaintiff's argument ignores the fact that the ALJ incorporated several limitations in Plaintiff's RFC in consideration of her difficulty with handling stress.  Plaintiff further argues that, because her medication, both the prescription and the dosage, was frequently changed, it is clear that her mental illness never stabilized.  To the contrary, it is common for medication to be changed during the treatment process.

Dr. Deogracias provided two assessments of Plaintiff, a daily activities questionnaire ("DAQ") on December 15, 2006, and a medical source statement ("MSS") on March 27, 2007.  In the DAQ, Dr. Deogracias observed that Plaintiff was clean, appropriately groomed, and well-oriented with no psychotic symptoms. *Id.* at 373.  Plaintiff's concentration and mood were "ok," her fund of information was fair, and her range of intelligence was average to bright.  Dr. Deogracias considered Plaintiff's insight fair, but her judgment poor. She noted that Plaintiff can understand and follow.  Furthermore, Plaintiff's ability to maintain attention was not impaired, and her ability to sustain concentration, persist at and complete tasks, was "probab. not too impaired." *Id.* at 325.

In the MSS, Dr. Deogracias characterized Plaintiff's ability to maintain her appearance, socialize, and understand, remember and carry out simple job instructions as fair, and her ability to leave home on her own as good.  However, Dr. Deogracias characterized every other criteria under making occupational adjustments, intellectual functioning, and making personal and social adjustment, as poor or none.  The MSS form specifically instructed the physician that "[i]t is

important to identify the particular medical or clinical findings (*i.e.*, mental status examination, behavior, intelligence test results, symptoms) which support your assessment of any limitation." *Id.* at 330. In the space provided on the form, Dr. Deogracias wrote, "[h]as serious Bipolar I D/O is very impulsive, inattentive, poor concent, poor judgment." *Id.* at 331.

After considering the content of both assessments, the ALJ wrote, "there are inconsistencies in [Dr. Deogracias' opinion on March 27, 2007, indicating poor or none in most areas compared with her opinion on December 11, 2006 when she indicated that the claimant could remember, understand, and follow directions, her attention was not impaired, her ability to sustain concentration, persist at task and complete task in a timely fashion was "probably not too impaired." *Id.* at 72. The ALJ also noted Dr. Deogracias' failure to provide any documentation supporting the discrepancy between her opinions. *Id.*

Dr. Robelyn Marlow, Ph.D., an agency physician, completed a mental residual functional capacity assessment ("MRFCA") on July 12, 2006. *Id.* at 310-312. She characterized Plaintiff as having no significant limitation in understanding and memory. According to the MRFCA, Plaintiff was moderately limited in her ability to maintain attention and concentration for extended periods of time, to complete a normal workday and workweek without interruption from psychologically based symptoms, to perform at a consistent pace, to interact with the general public, to get along with coworkers and peers without distracting them or exhibiting behavioral extremes, and to respond appropriately to changes in the work setting. *Id.* at 311. Dr. Marlowe provided the following elaboration, as requested by the form:

> The clmt has a history of Polysubstance Dependence including alcohol, cocaine, and valium. She reports no use since her suicide attempt in 1/06. At the time the clmt denied that it was a suicide attempt, however third party indicated that the clmt was stressed over losing her job and her boyfriend. The clmt began mental health tx. In 2/06. Records indicate that she is able to shop and clean, but needs assistance from her case manager. Case manager indicates she has a good relationship w/her friends, but has problems w/her family members. TS indicates problems with attention and stress tolerance. The clmt is able to perfomr [sic] simple repetitive tasks in a non-demanding work environment. As long as she abstains from DA/A she can concentrate and persist at tasks. The clmt would need a work environment w/brief and superficial interactions with others. The clmt's allegation of depression is consistent with medical evidence.

-8-

*Id.* at 312. Roy Shapiro, Ph.D., a reviewing agency physician, confirmed Marlowe's findings. *Id.* at 371.

The ALJ ultimately found that the evidence in the record did not support Dr. Deogracias' extreme assessment, but, instead, supported the conclusions of Marlowe and Shapiro. The Social Security regulations and rulings expressly recognize that state agency psychologists are "highly qualified physicians who are also experts in Social Security disability evaluations." 20 C.F.R. §404.1527(f)(2)(i); see also *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 651 (6th Cir.2006)(en banc)(affirming ALJ's decision adopting reviewing physician's opinion over opinion of treating physician).

Although the ALJ included several non-exertional limitations in Plaintiff's RFC, she gave no weight to Dr. Deogracias' opinion that Plaintiff was incapable of working. Contrary to Plaintiff's arguments, the ALJ correctly concluded that Dr. Deogracias' opinion lacks evidentiary support in the record, and she articulated that explanation for her refusal to give controlling weight to that portion of Dr. Deogracias' opinion. As a consequence, Plaintiff's arguments pertaining to the treating physician's rule are not well-taken.

In a related argument, Plaintiff contends that the ALJ erred in crediting the opinion of the ME in this case. At the hearing, the ME testified that the evidence in the record did not support Dr. Deogracias' assessment of Plaintiff's mental residual functional capacity. He criticized the "checklist" nature of Dr. Deogracias' MSS, insofar as she provided no explanation for her extreme conclusions. The ME further stated that "there's quite a bit of contradiction in the evidence which is more persuasive, the written descriptions of functioning, than just the checklists." *Id.* at 105. The ME cited numerous references to the record that contravened Dr. Deogracias' conclusion that Plaintiff''s mental functioning was poor to none in most categories:

> The diagnoses certainly fit but not the functional areas such as socialization. By the way, the E exhibits, I think match so if I go through those – so in social behavior. In 4E she has conversations with her mother. In 10E she has a great time with friend [sic]. In 28, in the new 28F, she gets along with parents. In, it's the new 25F, a friend saved her , brought her to the hospital when she had the so-called suicide attempt. In 22F, she was cooperative. In 10F, which is 20F, lived with family and friends. In 7F, which is the new 9F, she has good relationships with friends. In 4F, which is 4F, she has good relationships, great with mom, and today's testimony, she talked about living with a friend. As far as concentration, persistence, and pace, in

-9-

> 1E, it said no concentration problems. In 17F, which is 28F, she was alert, coherent and oriented with good memory. In 15F, which is 25F, she's alert and oriented. In 10F which is now 20F, she had okay concentration, memory, attention not impaired. As far as adaptive daily skills, in 1E her appearance and grooming were unremarkable. . . .[With respect to activities of daily life] 1E, appearance and grooming were unremarkable. In 4E, she's taking care of the dog, shopping, no problem with personal care, cleaning, do laundry, some money management. 5E, washes dishes, straightens up, cooks. . . .In 13F, which is now 23F, goes to movies, eats out.

*Id.* at 102-103.

The primary function of a ME is to explain the medical terms and findings in complex cases in terms that the ALJ, who is not a medical professional, may understand. *Richardson v. Perales*, 402 U.S. 389, 408, 91 S.Ct. 1420 (1972). The Commissioner's regulations provide that an ALJ "may also ask for and consider opinions from medical experts on the nature and severity of [the claimant's] impairment(s) and on whether [the] impairment(s) equals the requirements of any impairment listed in appendix 1 to this subpart." 20 C.F.R. §404,1527(f)(2)(iii). The opinion of a medical expert constitutes substantial evidence when it is detailed and consistent with other medical evidence in the record. *Atterberry v. Sec'y of Health & Human Servs.*, 871 F.2d 567, 570 (6th Cir. 1989).

Here, the ME testified that Dr. Deogracias' opinion that Plaintiff could not work was conclusory and not supported by the medical record in this case. With respect to the ME's testimony, the ALJ wrote:

> Although [the ME] testified that claimant would have some difficulty dealing in the area noted by Ms. Obias and Dr. Deogracias, he stated that conditions could be minimized to reduce stress to tolerable levels, such as minimal confrontations, negotiations, quotas, and time limits. He opined that the claimant's residual functional capacity is for simple repetitive tasks in a nondemanding work environment, without strict production quotas or time limits, and limited contact with the public. Based upon the consistency of his testimony with the evidence, I give great weight to [the ME's] opinion.

*Id.* at 72. As stated previously, the undersigned finds that there was insufficient evidence in the record to support Dr. Deogracias' conclusion regarding the extreme nature of Plaintiff's mental health problems. However, the evidence fully supported the opinions of agency physicians and the

ME that Plaintiff could perform full-time work with certain non-exertional limitations. Therefore, the ALJ did not err in crediting the opinion of the ME based upon the record in this case.

For the foregoing reasons, the decision of the Commissioner is AFFIRMED.

DATE: March 19, 2012

                                                   */s/George J. Limbert*
                                                 GEORGE J. LIMBERT
                                                 UNITED STATES MAGISTRATE JUDGE